

FILED

Dec 18 2019, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan D. Harwell
Indianapolis, Indiana

APPELLEE PRO SE

Leslie M. Smith
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rickey Smith, <br> *Appellant-Respondent,* <br><br> v. <br><br> Leslie Smith, <br> *Appellee-Petitioner.* | December 18, 2019 <br><br> Court of Appeals Case No. 19A-DN-926 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather Welch, Judge <br><br> The Honorable Jeffrey L. Marchal, Magistrate <br><br> Trial Court Cause No. 49D01-1811-DN-43933 |

**Tavitas, Judge.**

## Case Summary

[1]     Rickey Smith ("Husband") appeals the trial court's denial of his motion to continue the dissolution hearing. We reverse and remand.

## Issue

Husband presents one issue on appeal, which we restate as whether the trial court abused its discretion when it denied Husband's motion for continuance.

## Facts

Husband and Leslie Smith ("Wife") married in 1986 and separated on November 2, 2018, when Wife filed a petition for dissolution of marriage. The couple has one emancipated adult child. On December 19, 2018, the trial court set the final hearing for March 5, 2019, at 9:00 a.m.

On March 4, 2019, Husband's attorney filed a motion to withdraw, indicating that: (1) "a breakdown in the attorney client relationship has occurred. Counsel is no longer able to adequately represent the Respondent. . ."; and (2) "[a]s of the date of filing, Respondent no longer wishes Counsel to continue representation and has obtained a copy of his entire file." Appellant's App. Vol. II p. 15. Husband's attorney did not include a motion to continue the dissolution hearing, which was set for the following day. That same day, the trial court granted Husband's attorney's motion to withdraw.

On March 5, 2019, Husband appeared pro se at the dissolution hearing and Wife appeared with her counsel. When Wife's attorney called Wife to testify, Husband and the trial court engaged in the following discussion:

> [HUSBAND]: I had surgery the 19th of February. I still have 14 stitches in me. [Husband's former attorney] did not send me nothing. I have not – I – I have not seen our – uh W2 forms. I go to VA to try and get my VA started again. And after the

paperwork they said I haven't had my taxes done in 5 years. But Josh said she has tax forms. So, Josh got mad at me – I've been sleeping on the street since September, sir. I'm 65 years old. She ran me out of the house by turning off the thermos – the – uh. . . . (Unintelligible) – uh – on both sides of the house. And then she started using the nest – uh – (Unintelligible) setting that off in the middle of the night. Then she started. . .

[WIFE'S ATTORNEY]: . . . Objection, Judge. . . .

\* \* \* \* \*

[HUSBAND]: . . . I haven't seen anything. Josh haven't [sic] given me anything. I had surgery the 19th. I was down (Unintelligible) – you can see all my notes on my phone. . .

THE COURT: . . . Sir, what – what are you getting to.

[HUSBAND]: . . . Well, (Unintelligible) a continuance to get an attorney.

THE COURT: No, that'll be denied.

[WIFE]: . . . . No.

\* \* \* \* \*

THE COURT: . . . Your attorney moved to withdraw yesterday. . . .

\* \* \* \* \*

THE COURT: . . . And there – and there was no contemplation that you needed a continuance at all.

[HUSBAND]: . . . Well, sir. . .

THE COURT: . . . He indicated that you fired him at the last minute.

[HUSBAND]: Yes, sir – yes, sir.

THE COURT: So we're going to finish this today. . .

\* \* \* \* \*

THE COURT: Now, if you would like a minute to review all of that and to talk to [Wife's attorney], perhaps we can come to an agreement. This is a case without children.

\* \* \* \* \*

THE COURT: . . . This is about stuff.

[HUSBAND]: Yes, sir.

THE COURT: This should be a very simple proposition.

Tr. Vol. II pp. 5-6.

[6]     Husband told the trial court: ". . . I'm a 65-year veteran. I have not educated [sic] – I educated my wife and all my kids. No, I'm not educated. I'd like to – whatever you want that – (Unintelligible) best with you, sir. I don't know – not

a thing. . ." *Id.* at 7. Husband also made numerous references to the fact that Husband's former attorney had all of Husband's documents. The trial court then advised Husband that it was time to "get this divorce over with," and that the trial court's plan was to put everything "all in one pot and [ ] split it right down the middle." *Id.* at 9.

[7] During the hearing, Husband testified that the relationship between him and his attorney broke down because his attorney called him a liar. Husband also made several other statements during the hearing regarding the absence of an attorney, including that "[i]f [Husband] had an attorney" he would have been able to obtain some bank information and that his attorney "never gave [Husband] anything" regarding documentation of the couple's assets. *Id.* at 33, 40. Finally, Husband indicated that he has "a second-grade educat[ion]." *Id.* at 84. At this March 5, 2019, hearing, the trial court also heard evidence on the Wife's request for an order for protection based on allegations of abuse in the couple's relationship. The trial court orally stated that the evidence presented by Wife "justif[ied] the issuance of a permanent protective order." *Id.* at 114. At the conclusion of this evidence, the trial court took the petition for dissolution of marriage under advisement.

[8] On March 14, 2019, Husband filed a "motion for new divorce hearing," indicating that Wife "presented fraudulent IRS documentation"; "did not put the Gold and Diamond watches on her list"; and the "list of assets was not correct. . . ." *Id.* at 18. On March 18, 2019, the trial court denied Husband's petition without a hearing. On March 25, 2019, the trial court entered a written

order granting Husband $318,858.26 or 49.87% of marital assets and Wife $320,439.41 or 50.12% of marital assets based on Wife's valuations of the marital property. Husband now appeals.

## Analysis

Husband raises the sole issue of whether the trial court abused its discretion in failing to grant Husband's motion for continuance.

> The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court. We will reverse the trial court only for an abuse of that discretion. An abuse of discretion may be found on the denial of a motion for a continuance when the moving party has shown good cause for granting the motion. A trial court abuses its discretion when it reaches a conclusion which is clearly against the logic and effect of the facts or the reasonable and probable deductions which may be drawn therefrom. *If good cause is shown for granting the motion, denial of a continuance will be deemed to be an abuse of discretion.* No abuse of discretion will be found when the moving party has not shown that he was prejudiced by the denial.

*F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012) (citations and quotations omitted) (emphasis added).

As put by the United States Supreme Court:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrawise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with

counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.

*Ungar v. Sarafite,* 376 U.S. 575, 589-590, 84 S. Ct. 841, 849-50 (1964) (citations omitted), *reh'g denied.*

[11] In the case before us, the trial court impeded Husband's ability to show good cause as to why the motion for continuance should be granted when it denied Husband's motion to continue without hearing any argument. Shortly after denying Husband's motion without argument, trial court pre-determined the outcome of the case, telling Husband that he was going to "split" the marital assets "right down the middle." Tr. Vol. II p. 9. The trial court's actions demonstrated a "myopic insistence upon expeditiousness." *Ungar,* 376 U.S. at 589, 84 S. Ct. at 849.

[12] The circumstances of this case show that Husband demonstrated good cause as to why the motion to continue should have been granted. First, there is no evidence in the record that Husband was attempting to prolong the proceedings or engage in dilatory tactics. In fact, Husband stated that he hoped the dissolution proceeding would be completed quickly. Second, the dissolution hearing was held a mere four months after the petition for dissolution was filed. The chronological case summary ("CCS") does not indicate there were any other prior motions to continue the dissolution trial. Third, Husband argued that he had surgery on February 19—roughly two weeks before the dissolution

hearing—and that Husband's attorney still had not provided Husband with his documents to proceed with the dissolution.[1]

[13] Fourth, and finally, the trial court denied Husband's motion to continue, despite its knowledge that Husband's counsel withdrew the day prior. Although Husband terminated his attorney, Husband was not provided ten-day notice of his attorney's withdrawal as required by the local rule.[2] *See Hess v. Hess,* 679 N.E.2d 153 (Ind. Ct. App. 1997) ("Although we cannot say that Husband is wholly free from fault for his counsel's withdrawal, we similarly cannot say that, in dissolution proceedings where emotions run high, attorney-client disagreement and conflict are unique."). We are mindful that the "unexpected and untimely withdrawal of counsel does not necessarily entitle a party to a continuance." *F.M.,* 979 N.E.2d at 1040. Still, this consideration is relevant when looking at whether the trial court abused its discretion in failing to grant Husband's motion to continue at a crucial stage in the proceedings, especially when not insignificant assets were at issue. *See Hess,* 679 N.E.2d at 154 (holding "among the things to be considered on appeal from the denial of a

---

[1] We acknowledge that these facts were not presented to the trial court under oath.

[2] The Marion County Local Rule LR49-TR3.1-201, regarding the withdrawal of an appearance, states that: "[p]ermission to withdraw shall be given only after the withdrawing attorney has given his client ten days written notice of his intention to withdraw. . . ." Moreover, pursuant to the rule:

> The letter of withdrawal [to the attorney's client] shall explain to the client that failure to secure new counsel may result in dismissal of the client's case or a default judgment may be entered against him, whichever is appropriate, and other pertinent information such as trial setting date or any other hearing date. The Court will not grant a request for withdrawal of appearance unless the same has been filed with the Court at least ten days prior to trial date, except for good cause shown.

motion for continuance, [is] whether the denial of a continuance resulted in the deprivation of counsel at a crucial stage in the proceedings").

[14] Accordingly, Husband was prejudiced by all of the above circumstances and the denial of Husband's motion to continue was an abuse of discretion which infringed on Husband's due process rights. *See Ungar,* 376 U.S. at 589, 84 S. Ct. at 849.

## Conclusion

[15] Based on the facts and circumstances of this case, it was an abuse of discretion for the trial court to deny Husband's requested continuance. We reverse and remand.

[16] Reversed and remanded.

Brown, J., and Altice, J., concur.